**In re John S. BEESON, Individually and as Trustee, Relator.**

No. 01–11–00166–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 4, 2011.

John Joshua FitzaGerald, Michelle Taylor, Gregory Arthur Holloway, Tekell, Book, Allen & Morris, L.L.P., Houston, TX, Relator.

Katherine Jane Walters, Sheldon E. Richie, Richie & Gueringer, Austin, TX, Robert E. Morse, Crain, Caton & James, P.C., Houston, TX, for Real Party in Interest.

Panel consists of Chief Justice RADACK and Justices SHARP and BROWN.

## OPINION

SHERRY RADACK, Chief Justice.

This is an original proceeding challenging the trial court's order requiring Realtor, John S. Beeson to produce certain tax returns.[1] We conditionally grant the writ.

## BACKGROUND

In the underlying lawsuit, real-party-in-interest The Alta Fay and Eugene R. Fant Children's Trust of 1978 Number One ("Trust") sued Beeson (the owner of real property abutting property owned by the Trust), alleging that Beeson has failed to properly remove and remediate asbestos contamination on his property.[2] The Trust contends that runoff from Beeson's property is contaminating its property, and it seeks an injunction as well as actual and exemplary damages.

### A. Request for Production of Tax Returns

The Trust served Beeson with requests for production that included a request for all of his "filed tax returns for the past ten (10) years." Beeson responded with the objection that this request "seeks information that is protected by the Defendant's privacy rights established by the constitutions of the State of Texas and the United States of America."

The Trust filed a motion to overrule Beeson's objection and compel production of the returns. The Trust argued that Beeson's privacy objection "has no merit as the parties have already agreed to the terms of a Protective Order." In its motion, the Trust also identified several bases for its claim that the returns are relevant, i.e., Beeson's tax returns (1) "may shed some light on the interrelationship" between Beeson, his undisclosed principal, and several related non-party entities that may have an ownership interest in the real property and/or be responsible for damages, (2) "may indicate Beeson's net worth for purposes of recovering punitive damages," and (3) "may also demonstrate that Mr. Beeson has the financial capacity to satisfy the damages sought by the Trust in this case or whether the Trust will need to pursue the other venturers in these joint ventures or Beeson's undisclosed principal." According to the Trust, the tax returns contain relevant information that "has not been produced elsewhere," and Beeson has "thwarted the Trust's attempts" to seek direct discovery from at least two related entities. Beeson in turn disputed that the Trust had carried its burden of demonstrating that the tax returns were relevant or material as required to overcome the strong privacy interest Texas law affords personal tax returns.

### B. The Trial Court Orders

The trial court entered an order compelling production of Beeson's tax return for "tax year 2009 and ensuing tax years." The court also entered a protective order restricting the disclosure of any confidential information disclosed in discovery, and

---

1. The underlying case is *The Alta Fay and Eugene R. Font Children's Trust of 1978 Number One v. John S. Beeson, Individually and as Trustee, and CenterPoint Energy Houston Electric, LLC*, No. 2010–29072, the Hon. Dan Hinde presiding.

2. The Trust also sued CenterPoint Energy Houston Electric, which owns an adjacent drainage ditch. These claims against CenterPoint, however, are not relevant to the issues in this original proceeding.

limiting its use to "solely for the purpose of preparation and trial of this litigation."

## C. This Appeal

Beeson filed a motion to stay the trial court's order of production, which we granted, and a Petition for Writ of Mandamus requesting that we direct the trial court to vacate its order requiring Beeson to produce his tax returns.

## APPLICABLE LAW

■■■ Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). Clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 839 (citing *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding)). When reviewing factual issues, the reviewing court may not substitute its judgment for that of the trial court. *Id.* at 839–40. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Id.* at 840.

■■■ The scope of discovery is generally within the trial court's discretion. *Dillard Dept. Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995). Discovery requests, however, must be reasonably tailored to include only matters relevant to the case. *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex.1995). When the trial court orders discovery exceeding the scope permitted by the rules of procedure, it abuses its discretion. *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding). Mandamus relief is proper for discovery that is "well outside the proper bounds." *In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998) (orig. proceeding).

Parties are entitled to seek discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action." TEX.R. CIV. P. 192.3(a). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX.R. EVID. 401.

■■■ "The general rule in financial records production cases is that the burden on the discovery of financial records lies with the party seeking to prevent production." *In re Brewer Leasing, Inc.,* 255 S.W.3d 708, 712 (Tex.App.-Houston [1st Dist.] 2008, orig. proceeding [mand. denied]). In other words, any party who seeks to exclude relevant documents, records, or other matters from the discovery process has the affirmative duty to plead and prove that a particular privilege applies. *Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985). When net worth is at issue because the plaintiff seeks exemplary damages, the trial court does not abuse its discretion by ordering the production of financial documents that are relevant and material to prove net worth. *See Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex. 1988) (orig. proceeding), *overruled on other grounds by Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992) (orig. proceeding); *In re Garth,* 214 S.W.3d 190, 192–93 (Tex.App.-Beaumont 2007, orig. proceeding); *Delgado v. Kitzman,* 793 S.W.2d 332, 333 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding); *Miller v. O'Neill,* 775 S.W.2d 56, 59 (Tex.App.-Houston [1st Dist.] 1989, orig. proceeding). But it may be an abuse of discretion to order the production of financial records "that would

not necessarily evidence" net worth. *Garth,* 214 S.W.3d at 194.

■ Tax returns are treated differently than other types of financial records, as evidenced by the supreme court's expressed "reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns." *Hall v. Lawlis,* 907 S.W.2d 493, 494–95 (Tex.1995) (citing *Sears, Roebuck & Company v. Ramirez,* 824 S.W.2d 558, 559 (Tex.1992)). This is because federal income tax returns are considered private and the protection of that privacy is of constitutional importance. *Maresca v. Marks,* 362 S.W.2d 299, 301 (Tex.1962) (holding that trial court abused discretion by ordering entire income tax returns for individuals and corporations "without separation of the relevant and material parts from the irrelevant and immaterial parts"). The sacrifice of such privacy should be "kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy." *Id.*

■ Accordingly—unlike when other types of financial records are sought— after a resisting party objects to the production of tax returns, the burden shifts to the party seeking to obtain the documents to show that the tax returns are both relevant and material to the issues in the case. *El Centro del Barrio, Inc. v. Barlow,* 894 S.W.2d 775, 779 (Tex.App.-San Antonio 1994, no writ); *see also Hall,* 907 S.W.2d at 494 ("Income tax returns are discoverable to the extent they are relevant and material to the issues presented in the lawsuit.") Because "privacy once broken ... cannot be retrieved," mandamus relief is proper when a trial court orders the production of tax returns that are immaterial or irrelevant to the cause in which discovery was sought. *Maresca,* 362 S.W.2d at 301.

■ "Federal income tax returns are not material if the same information can be obtained from another source." *In re Sullivan,* 214 S.W.3d 622, 624–25 (Tex. App.-Austin 2006, orig. proceeding); *see also Garth,* 214 S.W.3d at 194 (trial court abuses discretion by requiring production of tax returns when trial court's order also requires production of financial statements regarding net worth of party); *Chamberlain v. Cherry,* 818 S.W.2d 201, 207 (Tex. App.-Amarillo 1991, no writ) (holding that trial court did not abuse discretion in refusing to allow discovery of income tax returns because party seeking to obtain tax returns did not attempt to obtain other evidence of net worth, such as financial statements, and made no showing that tax returns were relevant to determination of party's financial position); *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 331 (Tex.1993) (Gonzalez, J. concurring) ("[T]rial courts should not allow discovery of private financial records, such as tax returns, when there are other adequate methods to ascertain net worth...."). Moreover, tax returns may not be discovered when the information sought is duplicative of information already provided. *Ramirez,* 824 S.W.2d at 559.

In sum, for the Trust to properly prevail in its request to obtain Beeson's tax returns, it must carry its burden to show that the tax returns it seeks are relevant and would not duplicate information already provided or available through other, less-intrusive means. *See Alexander,* 868 S.W.2d at 331; *Ramirez,* 824 S.W.2d at 559; *Chamberlain,* 818 S.W.2d at 207.

### ANALYSIS

■ The Trust argues, as a threshold matter, that Beeson's objection that producing his tax returns would violate his

right to privacy is insufficient to shift the burden to the Trust to show the relevance and materiality of the returns. Accordingly, the Trust asserts, the Court's mandamus review must be limited to the question of whether the protective order entered by the trial court sufficiently protects Beeson's privacy concerns without reference to whether the tax returns are otherwise discoverable. In response, Beeson argues that his privacy objection implicitly encompassed both relevance and materiality, and operated to shift the burden to the Trust.

We agree with Beeson. As Beeson noted, the Trust has not cited any authority holding that relevancy and materiality objections must be made separate and apart from privacy. More importantly, courts consistently recognize these issues as being necessarily intertwined. *E.g., In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 115 (Tex.App.-San Antonio 2002, no pet.) ("When a party has properly objected to a request for production based on privacy rights, it is the burden of the party seeking production to show the information sought is material, relevant and necessary."). We thus hold that the issues of relevance and materiality were implicitly subsumed within Beeson's objection that the production of his federal tax returns would violate his constitutional right to privacy.

■■■ "Once an objection is asserted, the party seeking discovery of the tax returns has the burden of showing relevance and materiality." *In re Sullivan*, 214 S.W.3d at 623–24 (shifting burden where party resisting discovery of tax returns objected that information sought was "protected by Defendant's rights of privacy," "duplicative of information sought in other Requests," and that party seeking documents failed to demonstrate it was "unable to obtain the requested information through less intrusive means").

■■■ Assuming that Beeson's tax returns are relevant, we conclude that the Trust has failed to meet its burden of demonstrating that Beeson's tax returns are "material," i.e., not duplicative of other produced information and not available through other channels. The Trust makes the conclusory assertion that it "tried other, less intrusive methods to obtain" the information it seeks. An examination of the Trust's allegations, however, demonstrates that its actual complaints are that (1) it does not like the form in which Beeson has provided information, and (2) it believes his tax returns may demonstrate that his other discovery responses are not true.

For example, the Trust protests that the deed to Beeson's property reflects that he holds title as "Beeson, as Trustee," and asserts that Beeson has "hidden the identity of any trust or of any principal." Beeson actually testified in his deposition, however, that there is no trust or undisclosed principal; he is the sole individual owner of the property. Thus, the Trust's complaint is not that Beeson has refused to disclose a trust principal, but rather that it does not believe Beeson's testimony that there is not an undisclosed principal.

The Trust next points out that various asbestos remediation documents produced in discovery reveal that different entities either requested quotes or contracted for remediation work on Beeson's property. Specifically, "Beeson Properties" requested quotes, "Sharpstown Venture" paid for remediation work, and "Hillcroft Venture" was designated as the generator of hazardous material on some of the manifests for waste disposal and was listed as the property owner on a Demolition Renovation Notification Form filed with the State. According to the Trust, these documents demonstrate that "Beeson clearly has not acted alone, but is less than forthright in

disclosing these relationships and their correlation to each other, when other forms of discovery are used."

Beeson objected to discovery directed at these entities because they are not parties, and testified in his deposition that Hillcroft Venture and Sharpstown Venture—despite their different names—are one and the same entity. He also testified that these entities only share two different names because of a paperwork error, and that he is essentially the sole owner of both, with his son Lee Beeson—the other owner—holding only a nominal interest.[3] The Trust's lawyer did not ask Beeson any questions during the deposition about "Beeson Properties." Again, Beeson has provided the information the Trust seeks about the "interrelationships" between various non-party entities; the Trust simply distrusts the information provided.

The Trust's position is similar to an argument that the Austin Court of Appeals rejected in *In re Sullivan*, a condemnation case in which the State sought a property owner's tax returns. 214 S.W.3d at 623. In that case, the income generated by the property's use as a recreational vehicle park was relevant to the property's condemnation value. The State contended that the financial statements reflecting income information provided by the property owner "were inconsistent with the financial data she subsequently disclosed in discovery." *Id.* at 624. The State thus reasoned that the property owner's income tax returns were "relevant and material because the information in the tax returns presumably represents the definitive account of the operation income and expenses associated with the property as an R.V. park, in contract to the inconsistent information . . . already produced." *Id.* (quotations

omitted). Assuming without deciding the relevance of the tax returns, the Austin Court of Appeals disagreed that the returns . were material and held the trial court's concluding otherwise to be an abuse of discretion. The court noted that, in support of its materiality argument, the State did "little more than express frustration" with alleged inconsistencies in the financial information produced. *Id.* And the court deemed it significant that the State "did not attempt to use (or explain why it could not use) interrogatories, depositions, or any other discovery device to follow-up its initial discovery request or further explore the basis" for the inconsistencies. *Id.*

Here, the Trust *has* followed up and received explanations for most of what it characterizes as inconsistencies in Beeson's discovery production. And it has failed to allege, much less establish, that any remaining questions cannot be resolved through less intrusive means. The Trust's suspicion that "Beeson's various roles [are] apparently aimed at hiding the character of his involvement with" hazardous asbestos is not enough to support the trial court's conclusion that Beeson's tax returns are material in this case.

Finally, the Trust argued to the trial court that Beeson's tax returns were necessary to demonstrate net worth and to determining whether Beeson has sufficient financial resources to satisfy any judgment. This Court has held that "if there are other adequate methods to ascertain net worth, the trial court should not allow discovery of tax returns." *In re Brewer Leasing*, 255 S.W.3d at 714. The Trust has not alleged, much less established, that the net worth information it purportedly seeks from Beeson's tax returns has not

**3.** The exhibits to the Beeson's deposition are not in the records, but the transcript reflects that several d/b/a documents explaining the relationship between Beeson, Hillcroft Venture and Sharpstown Venture were testified about and marked as exhibits.

been produced in other forms and cannot be discovered through other forms of discovery. Moreover, while we have doubts that a desire for pre-judgment discovery to determine whether a defendant has sufficient resources to satisfy a judgment could ever satisfy the relevance threshold for the discovery of tax returns, this argument suffers the same materiality flaw as the Trust's other arguments because the Trust has not alleged or demonstrated that information cannot be gleaned elsewhere.

In sum, a party's distrust, without more, is not sufficient to support compelling the production of tax returns containing information already provided or available in other forms. Thus, assuming the relevance of Beeson's tax returns, we hold that the returns are not material because the Trust has not carried its burden of demonstrating that the information it seeks has not already been provided in different form or that it is not available through less intrusive means.

## CONCLUSION

We conditionally grant Beeson's petition for writ of mandamus and direct the trial court to vacate its order requiring Beeson to produce personal income tax returns. The writ will issue only if the court fails to comply.