**Opinion issued January 23, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00758-CV

————————————

## IN RE JULIE STAGNER, LONGMONT PROPERTIES, LLC, RSJS MANAGEMENT, INC., RSJS VENTURES, LP, AND BRECK REAL PROPERTIES, LLC, Relators

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Non-party relators, Julie Stagner, Longmont Properties, LLC, RSJS Management, Inc., RSJS Ventures, LP, and Breck Real Properties, LLC, have filed a petition for writ of mandamus challenging the trial court's order denying their motion for protection and motion to quash subpoenas served on relators by real party in interest and defendant in the underlying lawsuit, Colliers International—Atlanta,

LLC ("real party").[1] Real party's subpoenas sought a deposition from Julie Stagner ("Julie") and documents from 2009 to the present, including documents identifying any real estate transactions in which relators engaged, their personal and private-entity tax returns, and all communications, including those between Julie and her ex-husband, Steve Stagner ("Steve"), a non-party employee of plaintiff Mattress Firm, Inc., while they were in the process of a divorce. Relators produced an affidavit from Julie and more than 600 pages of documents. They then moved for protection and to quash the subpoenas, arguing they were overbroad and irrelevant. The district court denied relators' motion without limiting any of the requests.

We hold that the trial court clearly abused its discretion by denying relators' motion for protection and to quash and by ordering production of overbroad discovery requests, and that relators lack an adequate remedy by appeal. Therefore, we conditionally grant mandamus relief.

**Background**

This original proceeding arises out of a lawsuit filed by Mattress Firm, in which it alleges "a massive, multi-year fraud, bribery, and kickback scheme involving the senior management of a national retailing company, a nationally-respected real estate brokerage firm, one of its senior officers, and multiple real

---

[1]     The underlying case is *Mattress Firm, Inc. v. Bruce Levy, et al.*, Cause No. 2017-73196, in the 151st District Court of Harris County, Texas, the Honorable Mike Engelhart presiding.

estate developers." In 2010, as Mattress Firm was expanding its retail stores, it hired several defendants as employees and real estate brokers and developers to facilitate the expansion. Mattress Firm terminated these defendants in 2016[2] when it discovered an alleged scheme to defraud it through various real estate transactions, and it filed the underlying lawsuit asserting claims for fraud, civil conspiracy, constructive trust, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligence.

One of the defendants—who is real party's employee and not a party to this original proceeding—filed a counterclaim against Mattress Firm for quantum meruit and tortious interference with an employment contract and with prospective contracts and business relations. In one sentence, the counterclaim alleges that Mattress Firm's then-President and CEO, Steve Stagner, participated in a real estate investment with several defendants through Steve's ex-wife, Julie, "in an apparent

---

[2]     Mattress Firm's Second Amended Petition, its live pleading at the time of this mandamus proceeding, does not state the end date of the allegedly fraudulent activity, only alleging, "[o]n information and belief, that these schemes were consistent and ongoing through the date on which Levy's and Vinson's employment was terminated by Mattress Firm . . . ," which was around the time defendant, Alexander Deitch, was terminated. Bruce Levy and Ryan Vinson were executives at Mattress Firm, and Deitch was a real estate broker employed by real party. Deitch's counterclaim against Mattress Firm alleges that he was terminated in 2016. Thus, for purposes of this opinion, the Court considers relators' unchallenged arguments that the allegedly fraudulent scheme occurred from 2010 to 2016 as correct.

effort to mask his investment" during a time that Mattress Firm claimed it did not know about defendants' fraudulent real estate activity. Based on its employee's counterclaim, real party issued the subpoenas at issue to relators seeking to discover information about Steve's supposedly secret real estate transactions. The nearly identical subpoenas requested information from 2006 through 2018, including "[d]ocuments or tangible things identifying and showing the terms of any transaction for any real property transaction in which [each relator] bought, sold, or leased real property either directly or through an entity in which it had a financial interest," "[d]ocuments or tangible things identifying any entity [each relator] is or was affiliated with as a buyer, seller, lessor, or lessee of real property," all relators' tax returns with supporting forms, schedules, and documents, and "all communications" between each relator and any other relator or party to the underlying lawsuit, including communications between Julie and Steve during their divorce proceedings in 2010.

In response, Julie produced an affidavit swearing that she and Steve divorced in 2010, and neither one is a party to Mattress Firm's underlying suit. She also averred that, while married, Julie and Steve formed the four relator-entities for asset protection purposes. Longmont Properties, LLC ("Longmont"), owned Julie and Steve's family home, which was sold after their divorce. Breck Real Properties, LLC ("Breck"), owns a rental property in Breckenridge, Colorado. RSJS Ventures, LP

4

("RSJS Ventures"), is the sole member of Longmont and Breck. RSJS Management, Inc. ("RSJS Management"), is the general partner of RSJS Ventures. Steve's only interest in any of the entities was a shareholder interest in RSJS Management until 2009 and a partnership interest in RSJS Ventures until 2012.[3] Steve has held no other interest in any relator entity. Other than Steve's prior interests described above, the sole shareholders of RSJS Management and the only limited partners of RSJS Ventures are Julie and her children.

Since they divorced in 2010, Julie and Steve have participated in only one investment at the same time, but Julie swore in her affidavit that they "participated separately" and she "do[es] not know the details of [Steve's] investment because his investment is separate from [hers]." No one alleges any defendant participated in this investment or that it is relevant to any of the parties' claims or defenses.

Julie further swore that, in 2015, Longmont participated in two real estate investments organized by one of the defendants. Steve did not participate in either 2015 investment. Longmont produced more than 600 pages of documents regarding the two 2015 investments. No controverting affidavits were filed.

---

[3] Under an agreement by the general and limited partners of RSJS Ventures, Steve retained a limited partnership interest in RSJS Ventures after their divorce until he received a certain sum in loss pass-through, which reverted to Julie upon completion of the agreement in 2012.

When real party was unsatisfied with relators' subpoena production, relators filed a motion for protection and to quash the subpoenas. After relators and real party briefed the issues, the trial court heard counsel's arguments without a record of the hearing, and the trial court denied relators' motion and ordered relators to "produce all documents and things responsive to [real party's] subpoenas . . . "

Relators filed a petition for writ of mandamus in this Court contending that the trial court abused its discretion by denying relators' motion for protection and to quash and by compelling relators to comply fully with real party's discovery requests as written. Relators ask us to vacate the trial court's August 16, 2018 order and instruct the court to grant relators' motion for protection and to quash real party's subpoenas for oral deposition and to produce documents.[4]

**Standard of Review**

Mandamus will issue only to correct a trial court's clear abuse of discretion for which the relator has no adequate remedy at law. *E.g.*, *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A clear abuse of discretion occurs when the trial court's decision is so arbitrary and unreasonable that it amounts to clear error. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)

---

[4] With its petition, relators filed a motion for temporary relief asking this Court to stay the trial court's August 16, 2018 order. This Court granted relators' motion and stayed enforcement of the trial court's order pending resolution of the mandamus petition. We lift the stay imposed by our August 24, 2018 order.

(orig. proceeding). Because a trial court has no discretion in determining what the law is, the trial court abuses its discretion if it clearly fails to analyze or apply the law correctly. *Id.* at 840. "To satisfy the clear abuse of discretion standard, the relator must show 'that the trial court could reasonably have reached only one decision.'" *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). "In determining whether appeal is an adequate remedy, [we] consider whether the benefits outweigh the detriments of mandamus review." *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding). "An order compelling discovery that is well outside the proper bounds is reviewable by mandamus." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding); *see also* TEX. GOV'T CODE ANN. § 22.221(b)(1) (authorizing courts of appeals to issue writs of mandamus against district court judge).

**Analysis**

Relators argue that the trial court abused its discretion by denying them protection from and ordering full compliance with real party's discovery requests, which are overbroad, irrelevant, and invasive, particularly considering that they are directed to a non-party, the ex-wife of the CEO and president (also a non-party) of the plaintiff below. Real party responds that its requests are relevant to allegations that Mattress Firm's CEO and president secretly invested with defendants during a

time Mattress Firm claims it did not know about the allegedly fraudulent real estate transactions at issue in the underlying lawsuit.

## I.    The trial court clearly abused its discretion.

Relators argue that the trial court abused its discretion by denying their motion for protection and to quash and ordering them to comply with discovery requests because: (1) the requests are not reasonably tailored to include only relevant matters, but instead are overbroad in time and subject matter and constitute an impermissible fishing expedition; (2) real party did not show that relators' tax returns were relevant or material as required; (3) the discovery is obtainable from other sources that are more convenient, less burdensome, and less expensive, namely parties to the underlying lawsuit; (4) the burden to non-party relators outweighs any benefit to real party, which is a party to the underlying lawsuit; and (5) the overbreadth and irrelevance of the discovery requests—particularly those seeking tax returns and communications between spouses during their divorce—raise privacy concerns.[5]

---

[5]    Real party argues that relators did not preserve these contentions because they did not file written objections to real party's discovery requests. We disagree. Relators did not waive any objections by filing a motion for protection and to quash rather than by serving written objections, and real party cites no authority for its argument. A person subpoenaed may serve written objections or may move for a protective order under Rule 192.6(b) before the time specified for compliance. TEX. R. CIV. P. 176.6(d), (e). And "[a] person need not comply with the part of a subpoena from which protection is sought . . . unless ordered to do so by the court." TEX. R. CIV. P. 176.6(e). Longmont served written objections, and all relators moved for protection and to quash the discovery requests. Because they objected to and resisted real party's discovery within the time required for a response, clearly stating the bases for their objections and the extent to which they refused the requests, relators did

8

"In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, . . . " TEX. R. CIV. P. 192.3(a); *see also* TEX. R. CIV. P. 176.3(b), 192.3(b). However, the trial court should limit discovery that is "obtainable from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." TEX. R. CIV. P. 192.4(a), (b). A subpoena recipient may serve written objections or move for a protective order from objectionable subpoena requests, and the recipient need not comply with such objectionable requests until ordered to do so by the trial court. TEX. R. CIV. P. 176.6(d), (e). "[T]rial courts 'must make an effort to impose reasonable discovery limits.'" *In re Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d 667, 668 (Tex. 2007) (orig. proceeding) (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding)).

"Requests for production must be 'reasonably tailored to include only matters relevant to the case.'" *In re Nolle*, 265 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding) (quoting *Am. Optical Corp.*, 988 S.W.2d at 713). A

---

not waive their objections to real party's discovery requests. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding).

discovery request "is not overbroad merely because it may include some information of doubtful relevance," and "parties must be allowed some latitude in creating discovery requests." *Id.* at 492 (quoting *Am. Optical Corp.*, 988 S.W.2d at 713 and *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding)) "That latitude is not unlimited, however." *Am. Optical Corp.*, 988 S.W.2d at 713. "If a reviewing court concludes that a trial court's discovery order is overbroad, the trial court has abused its discretion and the order must be vacated if there is no adequate remedy on appeal." *CSX Corp.*, 124 S.W.3d at 153.

## A. Real party's requests are overbroad in time.

Discovery requests that are overbroad in time encompass time periods beyond those at issue in the case. *In re Jacobs*, 300 S.W.3d 35, 44 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (citing *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding)). Relators argue that the subpoenas are overbroad in time because they seek information from 2006 to 2018 even though Steve has had no interest in any relator-entity since 2009 or 2012, and the fraudulent scheme alleged in the lawsuit occurred from 2010 to 2016.[6]

---

[6] Real party responds that relators waived their objection because they did not present it to the trial court and that, in any event, their request did not extend back thirty or more years and was thus not overbroad in time. We disagree. Real party first sent a subpoena to Longmont, which timely served written objections to each of real party's discovery requests, including an objection that the requests were "not limited to . . . any relevant time period." Thus, real party was on notice that at least one relator objected to the time period of the requests. Moreover, relators' motion for

We disagree that the time period of real party's requests is reasonable. While courts often hold that requests for thirty or fifty years' worth of information are fishing expeditions, even requests for five years' worth of information have been held overbroad. *See, e.g.*, *Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d at 669 (collecting cases). Real party's request for more than ten years of information goes well beyond the relevant time period of 2010 to 2016 that is at issue in the underlying litigation.

### B. Real party's requests are overbroad in subject matter.

Relators also argue that real party's requests are unlimited in subject matter and therefore are overbroad and constitute an impermissible fishing expedition. Real party responds that its requests concern only individuals and entities who participated with some defendants and projects that are similar in purpose to those of which Mattress Firm complains in the underlying lawsuit.

A review of real party's subpoenas, however, shows they are not reasonably tailored to seek only relevant information. For example, real party seeks documents about "any transaction for any real property" that is not limited to transactions with any party below or with Steve. Nor are real party's requests limited to transactions

---

protection and to quash—which attached Longmont's written objections as an exhibit—continued the objection by heavily relying on the timeline of the allegations made in the underlying lawsuit to argue that real party's requests were overbroad and irrelevant. *See Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 223 (finding no waiver where party resisting discovery "objected from the earliest instance," clearly stated objections and extent it refused request, and continued to object). Thus, relators preserved this issue for our review. TEX. R. APP. P. 33.1(a).

like those that Mattress Firm alleges were fraudulent. Real party's requests have little relation or relevance to the scope of the parties' dispute.

Real party's sole basis for the requests is that Steve allegedly covertly participated in real estate investments through Julie and relator-entities with people whom Mattress Firm now alleges defrauded it. This allegation is based on a counterclaim by real party's employee, who is also a defendant, which states, "Although [Steve] Stagner approached Deitch, Levy and Vinson to participate in a deal, he had his ex-wife Julie Stagner handle the investment in an apparent effort to mask his investment."

Real party points to several emails that it argues support its theory. In a chain of emails between defendants Levy, Deitch, and Vinson in November 2015, Deitch wrote that he needed "Steve's entity or if he wants to use his name for this agreement," and he then forwarded the email to Steve, stating, "This is same agreement [a]s our last deal. [Please check] out. Need an entity name and address." Steve forwarded the email to Julie, stating, "Need to discuss ASAP. Will call [you]." Around the same time, in another chain of emails, Deitch sent Levy an email stating, "I need the entity for [Vinson] and Steve." But that email was not forwarded to Steve; rather, it was forwarded only to Julie, who never mentioned Steve or indicated that Steve was affiliated with the investment. And in an earlier September 2015 email to Steve, Levy stated, "[Please] review standard partnership agreement. Other

12

operating agreement and lease will come once we conclude this to them. Need the corp[oration] name added and address. [Thanks]." Steve did not respond, but forwarded the email to Julie. At best, the record suggests confusion by several defendants about whether Steve or Julie was participating in the referenced investment, a confusion that is not resolved in the emails.

But other emails indicate Steve was not participating in those deals, despite the confusion and repeated emails from Levy, Vinson, and Deitch. In an August 23, 2016 email, Julie clarified her relationship with Steve and made clear that they do not invest together:

> I want to clarify as it might be confusing. Steve and I have been divorced since 2010. He remarried and divorced after that. When I did these deals with Bruce and Alex, Steve was going through a divorce with someone else and was not able to participate.
>
> Steve and I are friends and introduce each other to opportunities through our contacts. We are not legally connected financially and any investments we participate in are independent of each other.

In a September 8, 2016 email, Levy emailed an investor update to Steve, asking him to forward it to Julie. Steve responded, "they can send directly to her at [her email address, which he provided,] since it[']s her deal," and Steve forwarded the email to Julie.

Contrary to real party's arguments, these emails do not tend to show that Steve participated in *any* real estate transaction, much less secretly participated through relators. And the lack of evidence that Steve participated in any real estate

13

transaction with Julie or the other relators after their divorce in 2010 shows that real party's subpoenas are well outside the bounds of proper discovery and constitute an impermissible fishing expedition. *See Sanderson*, 898 S.W.2d at 815.

Despite the irrelevance and overbreadth of most of real party's requests, relators responded in good faith with an affidavit from Julie and more than 600 pages of documents. Real party argues Julie's affidavit is self-serving, but we disagree and find the uncontroverted affidavit is "clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily could have been controverted." *See, e.g.*, *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 734 n.9, 736 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997)). Julie's affidavit is not contradictory merely because it states that RSJS Ventures—Longmont's sole member—and RSJS Management—RSJS Ventures' general partner—have not participated in any financial investment with Steve or with any party to the underlying lawsuit. *See Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 567 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("A limited liability company, however, is a separate legal entity from its members."); *see also* TEX. BUS. ORGS. CODE ANN. §§ 101.106(b) ("A member of a limited liability company . . . does not have an interest in any specific property of the company."). Real party could have controverted Julie's affidavit, but it offered no evidence in rebuttal.

14

**C.      Real party did not meet its burden to obtain relators' tax returns.**

Real party did not meet its burden to show that relators' tax returns are relevant or material to any issue in the underlying lawsuit.[7] "[U]nlike when other types of financial records are sought[,] after a resisting party objects to the production of tax returns, the burden shifts to the party seeking to obtain the documents to show that the tax returns are both relevant and material to the issues in the case." *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding). "[F]ederal income tax returns are considered private and the protection of that privacy is of constitutional importance." *Id.* (citing *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding)); *see also Hall v. Lawlis*, 907 S.W.2d 493, 494–95 (Tex. 1995) (orig. proceeding) (explaining court's "reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns"). Real party offers no argument about the relevance and materiality of any of relators' tax returns, and thus did not meet its burden to obtain the returns.

Relators have complied with real party's discovery requests insofar as they were relevant and within the scope of discovery. Julie provided an affidavit, and real party offered no controverting testimony or any argument that it could learn

---

[7]      Real party's mandamus response argues that relators waived this objection, but we disagree. Relators' motion for protection and to quash argued that real party's requests for tax returns are "wholly irrelevant to this lawsuit" and objected to the confidential nature of the documents that real party sought, including tax documents. Thus, relators did not waive their objection. *See* TEX. R. APP. P. 33.1(a).

additional relevant information by deposing her. And Longmont produced all documents in its possession, custody, or control related to the two 2015 real estate investments, which are the only investments during the relevant time of the allegedly fraudulent real estate schemes that occurred from 2010 to 2016.

Real party's subpoenas to relators were overbroad in time and subject matter and were not reasonably tailored to discover only relevant information. The trial court abused its discretion by failing to analyze and apply the law correctly and by issuing an order to non-party relators to comply with real party's overbroad discovery requests. Relators have shown that the trial court reasonably could have reached only one decision, which was to limit the discovery requests. *See Liberty Nat'l Fire Ins. Co.*, 927 S.W.2d at 630.

## II.    Relators have no adequate remedy on appeal.

Relators also argue there is no adequate remedy by appeal. The Texas Supreme Court has explained that "where a discovery order compels production of 'patently irrelevant or duplicative documents,' . . . there is no adequate remedy by appeal because the order 'imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party.'" *CSX Corp.*, 124 S.W.3d at 153 (quoting *Walker*, 827 S.W.2d at 843). Furthermore, relators are not parties to the underlying proceeding and have no right to appeal the discovery order, and therefore no adequate appellate remedy exists. *In re Berry*, 578 S.W.3d 173, 182

(Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding) (citing *City of Houston v. Chambers*, 899 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding)); *In re Sassin*, 511 S.W.3d 121, 125 (Tex. App.—El Paso 2014, orig. proceeding).

## Conclusion

The trial court clearly abused its discretion in denying relators' motion for protection and to quash and ordering relators to comply with real party's overbroad discovery requests. Moreover, relators lack an adequate remedy by appeal. Accordingly, without hearing oral argument, we conditionally grant the writ of mandamus and direct the trial court to: (1) vacate its order, signed on August 16, 2018, denying relators' motion to quash and for protection and compelling relators to comply with real party's subpoenas for oral deposition and to produce documents; and (2) enter an order granting relators' motion for protection and motion to quash real party's subpoenas for oral deposition and to produce documents. *See* TEX. R. APP. P. 52.8(c). The writ will issue only if the trial court fails to comply. Any pending motions are dismissed as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.

17