

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

06-20-00039-CV

_____

IN RE LARRY T. LONG, INDIVIDUALLY, ET AL.

Original Mandamus Proceeding

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Larry T. Long, individually, Woodbine Production Corporation, Rusk County Well Service, Inc., and Larry T. Long and L. Allan Long, in their capacities as trustees of The Lawrence Allan Long Trust, The Charles Edward Long Trust, The Larry Thomas Long Trust, and The John Stephen Long Trust d/b/a The Long Trusts (collectively Relators), petitioned for a writ of mandamus complaining of the trial court's oral orders requiring them to produce certain documents, including income tax returns.

We deny, in part, the petition for writ of mandamus complaining of production of documents other than tax returns because the trial court's oral rulings related to those documents are not clear, specific, and enforceable and, as a result, are not subject to mandamus review. Even so, we conditionally grant mandamus relief from the trial court's order compelling the production of tax returns because the finding that they were material is premature.

## I. Standard of Review

"Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty, and there is no adequate remedy at law, such as an appeal." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (per curiam) (orig. proceeding)). "Generally, the scope of discovery is within the trial court's discretion." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). "However, the trial court must make an effort to impose reasonable discovery limits." *Id.* "A trial court's ruling that requires production beyond what our procedural rules permit is an

abuse of discretion." *Dana Corp.*, 138 S.W.3d at 301 (citing *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (per curiam) (orig. proceeding)).

"If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *Id.* (citing *Sanderson*, 898 S.W.2d at 815; *Walker*, 827 S.W.2d at 843). "[W]hen a trial court erroneously compels production of . . . tax returns, appeal is an inadequate remedy and mandamus relief is proper." *In re Vaughan*, No. 13-18-00541-CV, 2019 WL 962381, at *7 (Tex. App.—Corpus Christi Feb. 27, 2019, orig. proceeding) (mem. op.) (citing *Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995) (per curiam) (orig. proceeding); *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding)).

## II.     Factual and Procedural Background

This dispute originates from an alleged consultation agreement between B. Charles Spradlin (Charles) and Larry T. Long. The operative petition states that, in exchange for Charles's advice on which oil and gas leases Relators should purchase, Long agreed to assign Charles a 4.125% working interest at payout for each property purchased. Over the years, Charles received recorded assignments for agreed percentage interests on some, but not all, properties. Charles identified properties purchased by Relators under the alleged agreement for which he had no assignment and labelled these properties as "Exhibit A properties." Charles said he did not know of the amount of payout for Exhibit A properties because Relators, who owned and operated the leases, had refused to provide him with accounting information to determine if payout had occurred, which would entitle Charles "to an assignment from the [Relators] for the agreed percentage [working] interest along with any accrued revenues." Charles also identified

3

properties, labelled as "Exhibit B properties," for which he had received an assignment and alleged he was a co-tenant, but was not paid any revenue or provided with an accounting.

Ladonna Spradlin (Spradlin), individually and as independent executrix of the Estate of B. Charles Spradlin, sued Relators for, among other things, trespass to try title of Exhibit A properties, breach of the joint operating agreement on Exhibit B properties for failure to provide accountings, specific performance of joint operating agreements on Exhibit B properties, conversion, quantum meruit, promissory estoppel, and fraud.[1]  After the trial court lifted a prior order staying discovery on the damages issue, Spradlin propounded several discovery requests designed to measure alleged actual and punitive damages.

At an October 2019 hearing, Relators' counsel agreed to "produce the schedules on the oil and gas profitability redacted to the wells in question from [Relator's] tax returns" and represented that they would be the "best information" responsive to Spradlin's requests for accountings.  As a result of statements made by Relators at the hearing, in November, Spradlin filed requests for Relators to produce "[a]ll federal and state income tax returns (including all schedules, attachments, and worksheets) for each Defendant . . . that relate[d] to" certain Exhibit B properties without an assignment for "2009–2018" and certain Exhibit B properties that were subject to joint operating agreements for years "2004–2018."  Spradlin also requested Relators to produce what both parties refer to as "backup documentation" of income and expenses for certain years, including documents related to calculations of payout of Exhibit B properties, "profit and loss[]

---

[1]Spradlin died during the pendency of this mandamus proceeding.  The case will remain styled as it was docketed, and we will proceed as if Spradlin were alive.  *See* TEX. R. APP. P. 7.1(a)(1).

4

balance sheets and cash flow statements" of certain Exhibit A and B properties, and "documents relating to any type of financial account . . . receiv[ing] any form of deposits related to" oil and gas interests in Exhibit A or B properties. A request to produce "tax returns back to 2001" on Exhibit A properties was also made.

After the tax returns were not produced, the trial court held another hearing on January 31, 2020, and questioned Relators on why they had not produced "the redacted tax returns that were addressed [back in] October." Relators' counsel responded, "[T]he federal tax return is not going to give [Spradlin] any breakout as to any particular well; it's just going to be a cumulative number on the schedules." As best as we can decipher, the following portions of the transcript of the hearing, condensed from twenty-seven pages of transcript, appears to encapsulate the trial court's disputed oral orders compelling production of documents:

> THE COURT: Okay. We're looking at Exhibit A properties, tax returns back to 2001. . . .
>
> . . . .
>
> . . . . Court finds and is making a ruling that [tax returns are] likely to produce information that would be relevant and would be admissible evidence in a court proceeding in a case of this nature. And is ordering the production of all tax returns that you have for the relevant time years that you have in [your] possession [going back to] 2001. . . .
>
> . . . .
>
> . . . . We're now to Exhibit B items. . . .
>
> [COUNSEL FOR SPRADLIN]: Yes. And I think we may have covered it, Your Honor. Tax returns back to 2009 for all properties covered by a joint operating agreement or for which the parties are cotenants, regardless of a joint operating agreement. The Court has already ruled on the tax returns back to 2001.

. . . .

THE COURT:  Court . . . finds that those tax returns would be likely to produce information that would be relevant and admissible; and Court's going to order it.

. . . .

. . . . This is all the income and any backup documentation for that income. . . .

. . . .

. . . . What they're saying is they don't just need the summary of the income relating to what you provided, they need backup.  Do you have that, and what's the situation of the backup, where that is coming from.

. . . .

[COUNSEL FOR RELATORS]:  . . . [We] can give them the schedules we gave to the CPA that is the backup information from this report and then redact what's -- all the other -- the other wells; and that's the backup information.

. . . .

THE COURT:  All right.  Hang on.

Schedules ordered that reflect the income, the information that is already provided is going to be ordered to be produced.

. . . .

. . . . That's what this relates to, is anything that you provide income to in a manner that you did yesterday for cotenancy, you're also going to provide the backup, the schedule that was provided that provided you the information to say what the income was.  Does that make sense --

. . . .

. . . . What have you got that would be -- would the schedules also show expenses?

[COUNSEL FOR RELATORS]: Yes. What we report to the CPA is -- it totals all the expenses for that year for that particular well.

THE COURT:  All right. Then, that will address the expenses both -- do that for the accounting -- or, I'm sorry, the statement of expenses you provided yesterday for cotenancy, and the other causes of action that you're going to provide for, provide those schedules, as well.

. . . .

[COUNSEL FOR SPRADLIN]:  Do they not have a way of showing what goes into the lease operating expenses?

[COUNSEL FOR RELATORS]:  Well, you got -- we're supposed to be giving you the [joint interest billings] JIBs.

[COUNSEL FOR SPRADLIN]:  Okay.

THE COURT: All right.

. . . .

[COUNSEL FOR SPRADLIN]:  [The next item] goes to profit/loss balance sheets, expenses and cash flow statements from the record operating accounting systems.  This is the information that the record operators would have to keep through their operating systems like Wolfe Pack or QuickBooks.

. . . .

. . . . And we would ask for that for 2009 forward, and then from the date of assignment forward based on our conversion cause of action.

[COUNSEL FOR RELATORS]:  . . . . They got QuickBooks and Wolfe Pack, but basically, I can probably -- I'll have to discuss with my client, but I don't know if they would have this type of information . . . .

. . . .

THE COURT:  Hang on.  Court's going to order the production.  If it doesn't exist, it doesn't exist, but I need you to make that representation.

7

In their petition for writ of mandamus, Relators argue that the trial court erred in ordering production of tax returns "from 2001 to the present for Exhibit A Properties and from 2009 to the present for Exhibit B Properties . . . without redaction." They also argue that the trial court's order compelling backup documentation of income and expenses was erroneous. Spradlin disputes the nature of the trial court's rulings by arguing that the trial court did not abuse its discretion by ordering "redacted income tax returns from 2001–present for Exhibit A properties, and 2004/2005-present and 2009-present for respective Exhibit B properties," or the backup documentation.

### III. The Order to Produce Backup Documentation Was Not Sufficiently Specific

"Mandamus actions based upon a court's oral pronouncements are generally discouraged." *In re Rhew*, No. 05-16-00411-CV, 2016 WL 1551724, at *1 (Tex. App.—Dallas Apr. 15, 2016, orig. proceeding) (mem. op.) (citing *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding)). "An oral order by a trial judge may be considered on mandamus only if it is adequately shown by the trial court record." *Id.* (citing *In re Winters*, No. 05-08-01419-CV, 2008 WL 4816379, at *1 (Tex. App.—Dallas Nov. 6, 2008, orig. proceeding)). "An oral ruling is subject to mandamus review only if it is clear, specific, and enforceable." *Id.* (citing *Bledsoe*, 41 S.W.3d at 811; *In re Kelton*, No. 12-11-00355-CR, 2011 WL 5595219, at *1 (Tex. App.—Tyler Nov. 17, 2011, orig. proceeding) (per curiam) (mem. op.)). "An appellate court can determine whether an oral order meets these criteria by reviewing the reporters record from the hearing." *Id.* (citing *Bledsoe*, 41 S.W.3d at 811; *In re Winters*, No. 05-08-01486-CV, 2008 WL 5177835, at *1 n.1 (Tex. App.—Dallas Dec. 11, 2008, orig. proceeding) (mem. op.)).

8

When an oral ruling "does not reveal a pronouncement that, standing alone and without reference to other documents, is sufficiently clear or specific such that it defines what the judge ordered relators to produce," we cannot conclude that a trial court abused its discretion. *In re Greyhound Lines, Inc.*, No. 05-14-01164-CV, 2014 WL 5474787, at *3 (Tex. App.—Dallas Oct. 29, 2014, orig. proceeding) (mem. op.). Also, when "[t]he trial court's decision is articulated over the course of several pages in the reporter's record and is made in the context of considerable discussion with counsel seeking to clarify the contours of the trial court's decision," the ruling may be "obscured by discussion of a number of contingencies" that require an appellate court to find that the ruling is not sufficiently specific, clear, and enforceable. *Rhew*, 2016 WL 1551724, at *1.

Here, the parties are at odds on the precise meaning of the trial court's rulings on the backup documentation showing income and expenses. Even Relators concede that "[t]he Trial Court's directions in his order regarding all documents on income and expense may be ambiguous." They point out two possible constructions of the trial court's ruling:

> [O]ne construction of the Court's ruling is that it is ordering Defendants to produce all documents regarding individual items of income and individual items of expense of all the Exhibit A and B Properties from 2001 to present. This would include all checks and wire transfers into each Defendant regarding payments from producers, all checks to royalty owners and other working interest owners for whom the Defendant is marketing their share of production, all JIB's, all underlying backup documents to all JIB's, including invoices and checks in payment for invoices for goods and services provided to the well sites, including electricity, pumpers, etc. from 2001 to the present, Defendants' general accounts, and also including all documents requested in Spradlin's first requests . . . , in addition to the worksheets and schedules which Defendants provided their accountants each year in connection with the accountant's preparation of Defendants' Returns with regard to the income and expenses of the individual wells. Another construction of the Trial Court's order is that the Court is only ordering Defendants to provide worksheets and schedules which Defendants provided their accountants in connection with the accountant's preparation of Defendants' Returns with regard

9

to the income and expenses of the individual wells, together with any Railroad Commission reports regarding production, and Texas Comptroller of Public Accounts reports regarding gross revenues, production and net revenues for the time period, to the extent that such schedules/worksheets can be located by Defendants exercising due diligence to locate such documents.

We conclude that the trial court's orders about backup documentation referenced outside documents, were made in the context of discussion and arguments that obscured the clarity of the rulings made, and as a result, led to orders that could be subject to multiple interpretations. For these reasons, we find that the trial court's oral rulings on backup documents are not subject to mandamus review since they were not clear, specific, and enforceable. We deny the petition for writ of mandamus challenging these rulings on backup documentation.

## IV.    The Trial Court's Conclusion that Tax Returns Were Material Was Premature

The parties also argue over whether Relators were required to produce redacted or unredacted tax returns and what tax years were required to be produced for which properties. We need not address those issues because we determine that the trial court's conclusion that tax returns were material was premature because of its order compelling Relators to produce backup documents showing income and expenses for Exhibit A and B properties.

We "scrupulously examine discovery requests for income tax returns to balance privacy rights and the pursuit of justice" for the following reasons explained by the Texas Supreme Court:

> The protection of privacy is of fundamental—indeed, of constitutional—importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between the litigants outweighs protection of their privacy. But sacrifices of the latter should be kept to a minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

10

It is self-evident that the maximum protection of privacy is unattainable if trial courts do not exercise their discretion to safeguard from discovery those portions of income tax returns which are irrelevant and immaterial, and it is our view that failure to exercise such discretion is arbitrary action. A litigant so subjected to an invasion of his privacy has a clear legal right to an extraordinary remedy since there can be no relief on appeal; privacy once broken by the inspection and copying of income tax returns by an adversary cannot be retrieved.

*In re Vaughan*, No. 13-18-00541-CV, 2019 WL 962381, at *7 (Tex. App.—Corpus Christi Feb. 27, 2019, orig. proceeding) (mem. op.) (quoting *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding) (citing *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1991) (orig. proceeding) (per curiam) ("concluding that the issuance of mandamus was 'guided by our reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns'")).

That said, "[i]ncome tax returns are discoverable to the extent they are relevant and material to the issues presented in the lawsuit." *Id.* at *4 (quoting *Hall*, 907 S.W.2d at 494–95). "However, because of the privacy interests inherent in these documents, income tax returns may not be discoverable when there are other adequate methods to determine net worth" or other information sought from the tax returns. *Id.* (citing *In re Williams*, 328 S.W.3d 103, 116–17 (Tex. App.—Corpus Christi 2010, orig. proceeding); *Brewer Leasing*, 255 S.W.3d at 713–15; *In re Garth*, 214 S.W.3d 190, 194 (Tex. App.—Beaumont 2007, orig. proceeding) (per curiam)). "Further, income tax returns may not be subject to discovery when they would be duplicative of other information regarding net worth that has already been produced." *Id.* (citing *Sears, Roebuck & Co.*, 824 S.W.2d at 559).

11

At the January hearing, Relators indicated that some of the information potentially contained on the tax returns was provided to Spradlin the day before the hearing. The trial court also ordered production of backup documentation showing income and expenses at that hearing. Even so, Spradlin argues that the tax returns are relevant to discover if payout had occurred and to assist in calculation of actual and punitive damages.

"The burden of proof regarding discovery of income tax returns differs from that pertaining to other types of financial records." *Id.* at *5. "The general rule is that the burden on the discovery of financial records lies with the party seeking to prevent production." *Id.* (citing *In re Beeson*, 378 S.W.3d 8, 11–12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding); *Brewer Leasing*, 255 S.W.3d at 712). "In contrast, after a resisting party objects to the production of tax returns, the burden shifts to the party seeking to obtain the documents to show that the tax returns are both relevant and material to the issues in the case." *Id.* (citing *Beeson*, 378 S.W.3d at 11–12; *In re Sullivan*, 214 S.W.3d 622, 624 (Tex. App.—Austin 2006, orig. proceeding)).

"[T]rial courts should not allow discovery of private financial records, such as tax returns, when there are other adequate methods to ascertain" the information sought from those returns. *Id.* (quoting *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 331 (Tex. 1993) (Gonzalez, J., concurring)). As a result, the party seeking tax returns must show that the information "cannot be discovered through other, less-intrusive means than the income tax returns." *Id.* (citing *Beeson*, 378 S.W.3d at 13; *In re Patel*, 218 S.W.3d 911, 918 (Tex. App.—Corpus Christi 2007, orig. proceeding); *Sullivan*, 214 S.W.3d at 623). This is because "[f]ederal income tax returns are not

material if the same information can be obtained from another source." *In re Sullivan*, 214 S.W.3d 622, 624–25 (Tex. App.—Austin 2006, orig. proceeding).

Spradlin points to statements made by Relators' counsel at the October hearing stating that the tax returns had the "best information" responsive to Spradlin's requests for production. This argument relates to relevance.

On the issue of materiality, Spradlin must "carry [her] burden to show that the tax returns [she] seeks . . . would not duplicate information already provided or available through other, less-intrusive means." *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App. —Houston [1st Dist.] 2011, orig. proceeding). Spradlin merely argues, in conclusory form, that she "cannot obtain this information from another source, and because this case is predicated on deceitful business practices, Spradlin cannot trust, based on Relators' word, that the income tax returns do not contain information responsive to Spradlin's request for discovery." First, "a party's distrust, without more, is not sufficient to support compelling the production of tax returns containing information already provided or available in other forms." *Id.* at 15. Second, this conclusory argument does not explain whether the information produced the day before the January hearing and the backup documentation ordered could reveal information sought from the tax returns or why Spradlin cannot use "interrogatories, depositions, or any other discovery device to follow-up its initial discovery request[s]" to obtain that information. *See In re Bullin*, No. 10-15-00423-CV, 2016 WL 934010, at *4 n.3 (Tex. App.—Waco Mar. 10, 2016, orig. proceeding) (mem. op.) ("merely stating a belief that the information cannot be obtained elsewhere is [not] enough to satisfy [the] burden

13

of demonstrating that production of . . . federal income tax returns is . . . material."); *Sullivan*, 214 S.W.3d at 625.

Here, the record reflects that the trial court judiciously attempted to balance the concerns related to the production of tax returns with Spradlin's need to obtain relevant, material information. Even so, because the trial court ordered production of "backup documentation" for income and expenses, its ruling that information on the tax returns could not be obtained from another source was premature. *See Bullin*, 2016 WL 934010, at *4; *Brewer Leasing*, 255 S.W.3d at 715; *Sullivan*, 214 S.W.3d at 625. As a result, at this point in the proceedings, mandamus relief from the order compelling production of the tax returns is proper. *Vaughan*, 2019 WL 962381, at *7.

## VI.    Conclusion

We deny, in part, the petition for writ of mandamus complaining of production of documents other than tax returns because the trial court's oral rulings related to those documents are not clear, specific, and enforceable and, as a result, are not subject to mandamus review. Even so, we conditionally grant the petition for writ of mandamus and direct the trial court to withdraw the portion of its oral order requiring the production of tax returns. The writ will issue only if the trial court fails to comply. *See* TEX. R. APP. P. 52.8. Due to our dispositive rulings, all other relief not granted herein is denied.

In so ruling, we emphasize that we express no opinion about the resolution of any discovery disputes that might arise during future proceedings in this case, including whether, after other proceedings, the tax returns could later be shown to be relevant, discoverable, and material.[2]

Scott E. Stevens
Justice

Date Submitted:     August 24, 2020
Date Decided:       August 25, 2020

---

[2]On July 9, 2020, this Court granted Relators' motion for an emergency stay of the trial court's orders compelling discovery. As a result of this opinion, the emergency stay of the orders compelling production of documents other than the tax returns is hereby lifted.

15