# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0426
════════════

SAFESHRED, INC., PETITIONER,

v.

LOUIS MARTINEZ, III, RESPONDENT

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued October 24, 2011**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case requires us to clarify the nature and scope of the cause of action for wrongful termination of an employee for refusing to perform an illegal act that we recognized in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985). In particular, we must determine whether a plaintiff in a *Sabine Pilot* action may recover punitive damages, and if so, what must be shown as a prerequisite for those damages. We agree with the court of appeals' conclusion that a *Sabine Pilot* cause of action sounds in tort and allows punitive damages upon proper proof. However, because we hold that Martinez failed to present legally sufficient evidence of malice relating to his firing, we reverse the court of appeals' judgment insofar as it affirms the award of exemplary damages.

## I. Facts

Martinez worked for Safeshred in October of 2007 as a commercial truck driver, hauling loads of cargo between Dallas, San Antonio, Houston, and Austin. Prior to each haul, he was required to perform a pre-trip inspection of the truck to confirm its compliance with relevant safety regulations. Martinez repeatedly discovered safety violations in the vehicle he was asked to drive throughout the beginning of October, but was consistently ordered to drive the truck anyway. The first incident occurred on October 1st, when Martinez was asked to drive a truck despite his pointing out a missing Texas Department of Transportation identification number and expired dealer's tag (both violations of relevant regulations). The same defects remained in the truck he was ordered to drive on October 8th, and on that trip Martinez was pulled over and cited by a Department of Public Safety officer for numerous violations of state and federal regulations. Among the citations was one for improperly secured cargo, due in part to substantial cuts in straps used to secure the load to the truck bed. *See* 49 C.F.R. § 393.106(b) (2011) (requiring proper cargo placement and restraint to protect against shifting and falling cargo). Martinez testified that he showed the citation and described the problems to Safeshred management. Having been told by the DPS officer not to drive the truck again until the defects had been remedied, Martinez refused to drive the truck when asked by Safeshred to do so again on October 9th.

After a week of administrative duties during which time Safeshred supposedly sought to bring the truck into compliance with state and federal regulations, Martinez was again asked to drive the truck on October 15th. But while Safeshred had apparently corrected some of the defects on the truck (like the missing and expired tags), Martinez's concerns about the load's legality persisted.

2

The cut straps that had prompted a citation by the DPS officer on October 8th remained, the load was unsafely stacked higher than the top of the truck's cab, and there was no dunnage[1] between the two main rows of the steel shelving. For a third time, Martinez complied with Safeshred's order to drive the truck anyway. Finally, on October 17th Safeshred again asked Martinez to drive an improperly secured load. In addition to the cut straps, highly stacked load, and lack of dunnage, the steel shelving extended off the back of the trailer. This time, Safeshred managers called DPS and confirmed the legality of the shelving extending off the back. But Martinez continued to warn Safeshred about the other safety hazards (straps, height, and dunnage) despite conceding the legality of the overhang. Martinez began to drive the truck, but turned around after a few miles when he felt the cargo shifting and feared for his safety. After again urging his concerns over the legality of the load all the way up Safeshred's chain of command, he was told to either drive the truck or go home. He went home and was fired.

In December, Martinez brought a wrongful termination claim against Safeshred under *Sabine Pilot*, seeking lost wages, mental anguish damages, and exemplary damages. The jury awarded $7,569.18 in lost wages, $10,000 in mental anguish damages, and $250,000 in exemplary damages, which the trial judge reduced to $200,000 to comply with the statutory cap in section 41.008 of the Texas Civil Practice and Remedies Code. The court of appeals found the evidence factually insufficient to support the mental anguish damages, but affirmed the other two awards.

---

[1] Martinez described dunnage as any material placed in between two rows of equipment, to fill in any empty space and prevent the rows from shifting and becoming off balance. A driver may use sacks—blown up with air to fill the space—or empty pallets shoved in the gap to accomplish this purpose.

## II. Discussion

In *Sabine Pilot*, we recognized a narrow exception to the at-will employment doctrine allowing employees to sue their employers if they are discharged "for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d at 735. The at-will employment doctrine generally holds that employment for an indefinite term may be terminated at will and for any reason. *Id.* at 734 (citing *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)). However, we recognized a narrow exception in *Sabine Pilot* because of the public policies expressed in our criminal laws, *id.* at 735, and to prevent employers from forcing employees to choose between illegal activity and their livelihoods, *see Winters v. Hous. Chron. Pub. Co.*, 795 S.W.2d 723, 724 (Tex. 1990). We have yet to elaborate on the fundamental nature of a *Sabine Pilot* claim or determine the types of damages available under it.

### A. The Availability of Punitive Damages

#### 1. Tort or contract

The first question we must answer is whether a *Sabine Pilot* claim sounds in tort or contract, because the answer to that question will decide whether exemplary damages are recoverable. While exemplary or punitive damages may generally be awarded for torts involving malicious or grossly negligent conduct, they are not available for breach of contract claims. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). Safeshred argues that the employment relationship is inherently contractual, and that *Sabine Pilot* essentially supplements that relationship with an implied contractual provision preventing discharge for refusal to perform an illegal act. Martinez,

on the other hand, notes that every Texas case to categorize a *Sabine Pilot* claim has labeled it a tort,[2] and that comparisons to other statutory wrongful termination causes of action support that characterization. Courts outside of Texas are split on whether a public policy exception to the employment-at-will doctrine, like a *Sabine Pilot* claim, sounds in tort or contract. *Compare Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 841 (Wis. 1983) (contract), *and Monge v. Beebe Rubber Co.*, 316 A.2d 549, 551 (N.H. 1974) (same), *with Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984) (en banc) (tort), *and Parnar v. Americana Hotels, Inc.*, 652 P.2d 625, 631 (Haw. 1982) (same). We conclude that such claims sound in tort.

Apart from *Sabine Pilot*, this Court has steadfastly adhered to the employment-at-will doctrine. *See, e.g.*, *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006). In that vein, we have consistently refused to expand *Sabine Pilot* beyond the "narrow exception" we recognized in that case. *See id.* at 332–33 (refusing to expand *Sabine Pilot* liability to cover whistleblower actions not already authorized by statute); *Winters*, 795 S.W.2d at 725 (same). Safeshred argues that, in order to maintain that narrow interpretation, we must call a *Sabine Pilot* claim a contract claim. But, in fact, the opposite is true. To say the cause of action sounds in contract, we would need to drastically alter our view of the at-will employment relationship in general, rather than merely recognize a narrow exception to the at-will doctrine.

---

[2] *E.g.*, *Physio GP, Inc. v. Naifeh*, 306 S.W.3d 886, 887-888 (Tex. App.—Houston [14 Dist.] 2010, no pet.); *Draker v. Schreiber*, 271 S.W.3d 318, 323 (Tex. App.—San Antonio 2008, no pet.) (citing *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 610 (Tex. App.—Beaumont 2008, pet. denied)); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 373 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Garcia v. Sun Belt Rentals, Inc.*, 310 F.3d 403, 404 (5th Cir. 2002); *Hanold v. Raytheon Co.*, 662 F. Supp. 2d 793, 803 (S.D. Tex. 2009).

This is so because, to say that *Sabine Pilot* created an implied contractual provision would presume, in the first place, that there is a contract between at-will employees and their employers in which to place an implied provision. We have never recognized such a proposition. *See, e.g.*, *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502–03 (Tex. 1998) (treating the implied employment contract urged by petitioners as a significant departure from at-will employment); *Garcia v. Sunbelt Rentals, Inc.*, 310 F.3d 403, 404 (5th Cir. 2002) ("[N]o Texas court has held that an at-will employment relationship constitutes an oral contract . . . ."). On the contrary, we have long held firm to the principle that, in Texas, an at-will employee may be fired for a good reason, a bad reason, or no reason at all. *Brown*, 965 S.W.2d at 502. And where the promise of continued employment is illusory, it cannot form the basis of an enforceable contract. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 660–61 (Tex. 2006) (citing RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. a (1981); 3 WILLISTON ON CONTRACTS § 7.7 (4th ed. 1992)). It would be inconsistent to call *Sabine Pilot* an implied contractual restriction on a relationship that is not even contractual. *Cf. City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) ("[A] contractual limitation [like a duty of good faith and fair dealing] would afford more rights to the plaintiffs than at-will employees possess.").

Instead, we conclude that *Sabine Pilot* claims are not contractual in nature, but sound in tort, providing a remedy when an employee refuses to comply with an employer's directive to violate the law and is subsequently fired for that refusal. This approach is consistent with our treatment of a statutory workers' compensation retaliation claim (another narrow exception to employment-at-will), which we have labeled an intentional tort. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d

6

444, 453 (Tex. 1996) (discussing TEX. LAB. CODE § 451.001). It also gives due attention to the fact that *Sabine Pilot* liability stems not from an agreement between employer and employee (the subject of contract), but from legislatively expressed public policies embodied in the criminal law. For these reasons, we hold that a *Sabine Pilot* claim sounds in tort, not in contract.

### 2. Punitive Damages for This Tort

Safeshred contends that, even if we recognize a *Sabine Pilot* claim as a tort, allowing exemplary or punitive damages would constitute an expansion of the claim that we did not intend in *Sabine Pilot*, and one better left to the Legislature. But punitive damages are generally available for common law torts so long as the traditional prerequisites are met: a finding of actual damages, *Doubleday & Co. v. Rogers*, 674 S.W.2d 751, 754 (Tex. 1984); and outrageous, malicious, or otherwise reprehensible conduct, *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994). Rather than expanding the claim, allowing punitive damages would merely avoid arbitrarily excluding a category of damages that is otherwise presumptively available. In a similar situation, where the Legislature only specified the availability of "reasonable damages" for workers' compensation retaliation claims, we interpreted that term to include punitive damages, which "have long been seen as an important policy tool and a valid measure of damages." *Azar Nut Co. v. Caille*, 734 S.W.2d 667, 669 (Tex. 1987) (citing *Hofer v. Lavender*, 679 S.W.2d 470, 474–75 (Tex. 1984)). Here, we face similar policy concerns to those presented by the statute at issue in *Azar Nut* (deterring employers from wrongfully terminating employees), as well as the additional objective of deterring violations of the criminal law. We hold that, in the proper case, *Sabine Pilot* plaintiffs may recover any reasonable tort damages, including punitive damages.

7

**B. Legal Sufficiency of Malice Evidence**

Following a liability question (which asked whether Safeshred fired Martinez for the sole reason that he refused to perform an illegal act), the trial court instructed the jury on malice, a prerequisite to an award of punitive damages according to this charge[3]:

> Do you find by clear and convincing evidence that the harm to Louis Martinez, III resulted from malice attributable to Safeshred, Inc.?
> . . .
> "Malice" means:
> a. a specific intent by [Safeshred] to cause substantial injury to Louis Martinez, III; or
> b. an act or omission by [Safeshred],
>> (i) which when viewed objectively from the standpoint of [Safeshred] at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>> (ii) of which [Safeshred] has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Safeshred argues that the "harm to Louis Martinez" referenced in this instruction was the firing itself, and that Martinez presented no evidence at trial that the act of firing involved any extremely reprehensible conduct. Martinez contends that there was legally sufficient evidence under Safeshred's formulation, and also argues that malice could be shown through Safeshred's indifference to the potential harm to Martinez (and to the public at large) had he gone through with

---

[3] Chapter 41 of the Civil Practice and Remedies Code requires that, unless otherwise specified by the statute creating the cause of action, a jury must find fraud, malice (specific intent to cause substantial harm), or gross negligence as a prerequisite to an award of exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.003. An earlier version of this statute defined malice as embodying either specific intent or gross negligence. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 19, § 1, sec. 41.001, 1995 Tex. Gen. Laws 108, 109 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE § 41.001). The trial court used this older version for its instruction. Because the adequacy of the jury charge is not before us on appeal, we review the evidence in light of the charge as given. *City of Ft. Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000).

the illegal acts. We agree with Safeshred, and conclude that the evidence of malice in this case was not legally sufficient because it did not relate to the firing itself.

### 1. What is "malice" in a *Sabine Pilot* Claim?

"The type of malice necessary to support punitive damages varies with the nature of the wrongful act at issue in any given category or particular type of case." *Cazarez*, 937 S.W.2d at 453. Even when using the statutory malice definition that was used in this case (intent to cause or conscious indifference to serious potential harm), the application of that definition will depend on the nature of the underlying tort. In a typical negligence case like medical malpractice, to recover exemplary damages a plaintiff must simply prove that the defendant was not merely negligent, but was grossly negligent or acted intentionally in causing the serious harm that is the subject of the cause of action. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). But when a tort requires willful harm as a necessary element of liability, that willfulness alone cannot also justify a punitive damages award. *See Ware v. Paxton*, 359 S.W.2d 897, 899 (Tex. 1962) ("The fact that an act is [tortious] is not itself ground for an award of exemplary or punitive damages."). More is required. *Cf. Cazarez*, 937 S.W.2d at 454 (requiring "actual malice" where the cause of action itself required intentional wrongdoing).

A *Sabine Pilot* claim falls into the latter category, since plaintiffs will always have to prove that an employer intentionally fired them for the sole reason that they refused to perform an illegal act. *Sabine Pilot*, 687 S.W.2d at 735; *see also Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 636 (Tex. 2004) (O'Neill, J., concurring) ("Every act of retaliation . . . is inherently willful—the act is motivated by the employer's conscious desire to 'get back' at the employee for exercising her

9

protected rights." (quoting *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 936 (11th Cir. 2000))).

A malice finding must require more than Safeshred's mere intent to fire Martinez, or else every Sabine Pilot claim would warrant punitive damages. *See Cazarez*, 937 S.W.2d at 454 (noting that punitive damages are only appropriate in the most egregious cases).

Therefore, in evaluating whether Safeshred officials specifically intended or were consciously indifferent to the prospect of substantial injury to Louis Martinez,[4] the "substantial injury" referred to in the charge must be something "independent and qualitatively different from the . . . compensable harms associated with [the cause of action]." *Moriel*, 879 S.W.2d at 19. For example, this type of malice might exist "'where the employer circulates false or malicious rumors about the employee before or after the discharge . . . or actively interferes with the employee's ability to find other employment.'" *Garza*, 164 S.W.3d at 636 (O'Neill, J., concurring) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703 n.19 (W. Va. 1982));[5] *see also Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 89 (Tex. App.—Waco 2007, no pet.) (finding sufficient evidence of malice where nursing home made employee's conduct look worse than it was before state nursing board,

---

[4] The jury charge included, in part (b) of the malice definition, "the potential harm to *others*" (emphasis added). But our cases hold, and Martinez concedes, that, while potential harm to the public at large may be relevant to the reprehensibility of Safeshred's conduct for purposes of evaluating the constitutionality of the amount of punitive damages awarded, only potential harm to Martinez himself is relevant to the availability of punitive damages in the first place. *See Bennett v. Reynolds*, 315 S.W.3d 867, 876 (Tex. 2010) (citing *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007)).

[5] The jury charge in *Garza* used the "actual malice" definition of malice, rather than the definition used here. 164 S.W.3d at 618 ("'Actual malice' means ill will, spite, evil motive, or purpose to injure another." (citing *Cazarez*, 937 S.W.2d at 452–54)). Nevertheless, the example is still applicable here because "purpose to injure another" in the *Garza* charge tracks the "specific intent . . . to cause substantial injury" language in part (a) of the malice definition in this case. The only difference between the evidentiary analysis in *Garza* and here is that, because of the jury charge we are bound by in this case, we may consider not just intentional actions by Safeshred, but also grossly negligent ones (per part (b) of the definition).

10

resulting in plaintiff's two-year probation). Damage to the employee's reputation or future employment prospects is a qualitatively different injury from the firing itself, and conscious indifference to a risk of that injury might warrant punitive damages.

Courts have also recognized malice where an employer engages in harassment in connection with a wrongful firing. *See Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 779 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (forcing an employee to sign a false confession); *Lubbock Cnty. v. Strube*, 953 S.W.2d 847, 859–60 (Tex. App.—Austin 1997, pet. denied) (singling an employee out for unfavorable work assignments and conducting an unfair disciplinary hearing prior to the firing). And malice might also exist when an employer knows the retaliatory firing is unlawful and does it anyway. *See Ancira Enters., Inc. v. Fischer*, 178 S.W.3d 82, 94 (Tex. App.—Austin 2005, no pet.) (asking, in a Texas Commission on Human Rights Act case, whether an employer "retaliated against [the plaintiff] with specific intent . . . or gross negligence regarding [the plaintiff]'s right to be free from such practices"); TEX. LAB. CODE § 21.2585(b) ("A complainant may recover punitive damages against a respondent . . . if the complainant demonstrates that the respondent engaged in a discriminatory practice with malice or reckless indifference to the state-protected rights of an aggrieved individual."). In keeping with these examples, we hold that malice could be shown in this *Sabine Pilot* case by evidence that Safeshred, in firing Martinez, consciously ignored a risk of some additional serious harm, such as interference with his future employment, harassment, or terminating his employment knowing the reason for doing so is unlawful.

But while both parties agree that malicious circumstances surrounding the firing, like those described above, would constitute malice in this case, Martinez suggests that we must also consider

11

the dangerousness of the illegal acts he was asked to perform. We disagree. "The legal justification for punitive damages is similar to that for criminal punishment, and like criminal punishment, punitive damages require appropriate substantive and procedural safeguards to minimize the risk of unjust punishment." *Moriel*, 879 S.W.2d at 16–17. One of those safeguards is that the conduct that is the basis for a punitive damages award must have a "nexus to the specific harm suffered by the plaintiff" in that case. *See Bennett v. Reynolds*, 315 S.W.3d 867, 875 (Tex. 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). The Supreme Court in *State Farm* explained:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant . . . . Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct . . . .

538 U.S. at 423.

Applying these principles to a *Sabine Pilot* claim, we hold that the employer's illegal directive to the employee (and any malice that might have accompanied that directive) cannot form the basis for a punitive damages award. Although the encouraged illegal activity has a connection to the cause of action in a general sense, it does not have a sufficient nexus to the harm actually caused to a *Sabine Pilot* plaintiff, for several reasons. First, we recognized the *Sabine Pilot* cause of action based on our limited authority to "judicially amend [the] judicially created [employment-at-will] doctrine." *Sabine Pilot*, 687 S.W.2d at 735. The only conduct made actionable (or punishable) by that decision is conduct which would otherwise have been governed by the employment-at-will doctrine—that is, a firing. A plaintiff may not bring a *Sabine Pilot* claim immediately after being

12

asked to perform an illegal activity, but must first refuse and be fired. Allowing punitive damages premised not on the actionable firing itself, but on the illegal conduct that might have occurred while the employment relationship was still ongoing, would be an improper expansion of the cause of action.

Moreover, it would be inconsistent with the way this Court and others have evaluated malice in other exceptions to the employment-at-will doctrine. In workers' compensation retaliation cases like *Garza*, the underlying accident or occurrence that motivated the plaintiff's workers' compensation claim in the first place is generally connected to the retaliation claim (because it initiated the series of events that gave rise to the cause of action). But when evaluating an employer's actual malice in those cases, we have never looked to the employer's conduct surrounding the workplace accident as proof of malice in the retaliation claim. *See Garza*, 164 S.W.3d at 628 (analyzing evidence surrounding the plaintiff's allegedly retaliatory demotion, but not the workplace accident, in finding legally insufficient evidence of malice); *Cazarez*, 937 S.W.2d at 454–55 (same). The same is true in the context of a whistleblower suit. A whistleblower action involves both illegal conduct by the employer (which the employee reports), and a retaliatory employment action for blowing the whistle, yet we only look to malice surrounding the employment action. *See City of Ft. Worth v. Zimlich*, 29 S.W.3d 62, 71–72 (Tex. 2000) (evaluating the City's malicious behavior in the retaliation against an employee, but not in the underlying illegal act, in a whistleblower action under TEX. GOV'T CODE § 554.001); *Town Hall Estates*, 220 S.W.3d at 88–89 (same, in a whistleblower action under the Health and Safety Code); *Strube*, 953 S.W.2d at 859–60.

13

All of these cases confirm that in retaliatory termination cases, the only malice relevant to allowing punitive damages is that surrounding the actual termination itself.

Furthermore, the nature of a *Sabine Pilot* claim means that the illegal activity an employee is asked to do never actually occurs (because the employee will have refused to do it and been fired). Thus, allowing punitive damages based on the unrealized consequences of the illegal directive would amount to impermissibly punishing the employer for harm the plaintiff never actually endures. *See State Farm*, 538 U.S. at 423 ("A defendant should be punished for the conduct that *harmed the plaintiff* . . . ." (emphasis added)). It would amount to impermissible punishment for "other parties' hypothetical claims," and "create[] the possibility of multiple punitive damages awards for the same conduct." *See id.* If an employee actually chooses to perform the illegal act and is harmed, that employee might have a remedy through a tort action against the employer, and the employer's malicious intent in ordering the illegal act may warrant punitive damages in that case. Criminal sanctions may also be warranted against the employer for issuing the illegal directive, whether it is followed or not, providing further punishment for that conduct. With those deterrent mechanisms already in place, allowing a *Sabine Pilot* plaintiff to recover punitive damages based on the dangerousness of the employer's hypothetical illegal activities could lead to the employer's being punished multiple times for the same conduct.

Accordingly, even if there was legally sufficient evidence that Safeshred was grossly negligent in ordering Martinez to drive the illegal truck loads, that gross negligence would not support punitive damages in this action because it was not relevant to the actionable firing itself. Malice in this case could only be shown by clear and convincing evidence that Safeshred, in firing

14

Martinez, intended or ignored an extreme risk of some additional harm (like interference with his future employment, harassment, or terminating him knowing it was unlawful to do so).

**2. Evidence of Malice in This Case**

Based on the formulation delineated above, Martinez did not present legally sufficient evidence for a reasonable trier of fact to form a firm belief or conviction that Safeshred acted with malice in firing him. *See Garza*, 164 S.W.3d at 627 (setting forth the standard for evaluating the legal sufficiency of evidence of a finding that requires clear and convincing evidence at trial). The only evidence relevant to this inquiry was that (1) Safeshred designated Martinez as "ineligible for rehire" in its internal employment records, and (2) the reason given on an internal report for Martinez's firing was that he "abandoned his job," with no mention of the dispute over the safety regulations.[6]  This evidence is insufficient to support a firm conviction that Safeshred was consciously indifferent to a risk of interfering with Martinez's future employment prospects or causing some other serious harm stemming from the firing itself.

Designating Martinez as "ineligible for rehire" could not have caused any harm that is qualitatively different from the firing itself. Having chosen to terminate Martinez, rightfully or wrongfully, Safeshred was fully entitled to choose not to rehire him. *See Cazarez*, 937 S.W.2d at 451, 455 (noting that "legally justified conduct" "was simply not probative to either establish a

---

[6] No evidence in this case showed harassment in connection with the firing, or Safeshred's knowledge that firing Martinez was unlawful. The court of appeals, in finding legally sufficient evidence of malice, relied primarily on evidence that Safeshred managers knew that driving the unsafe truck loads was illegal. But that is not the sort of conscious indifference that alone supports a finding of malice in a case like this. A malice finding based on Safeshred's knowledge of illegality would require a showing that the company knew the loads were illegal and was aware that the law did not permit it to fire an employee for refusing to perform an illegal act, but fired Martinez anyway. Martinez presented no such evidence.

15

violation or malice"). In fact, had Safeshred merely reassigned Martinez to another position rather than fired him, Martinez may not have even had a valid *Sabine Pilot* claim, which only prohibits "the discharge of an employee." *Sabine Pilot*, 687 S.W.2d at 735. Conduct which was necessary merely for liability cannot serve as a basis for punitive damages.

Secondly, evidence of the objective risk[7] of a disruption of Martinez's employment prospects was tenuous at best. The allegedly damaging remarks were made on an internal record, and there was no evidence that Safeshred ever communicated those sentiments to other companies in the industry. In fact, Martinez obtained a new job just two months after being fired by Safeshred, and a new job in the trucking industry a few months after that. Moreover, Martinez points to no evidence of the subjective component of gross negligence. Even assuming the remarks were potentially damaging, there was no evidence that Safeshred knew or intended that those remarks would interfere with Martinez's future employment or otherwise cause him harm. Under the formulation of malice appropriate for this case, no reasonable juror could have formed a firm conviction that Safeshred acted with malice. And without the prerequisite finding of malice, Martinez was not entitled to exemplary damages.

---

[7] Gross negligence (a type of "malice" according to the charge here) has two components: objective dangerousness or risk, and subjective knowledge of and disregard for that risk. *Moriel*, 879 S.W.2d at 23.

### III. Conclusion

In summary, we hold that (1) a *Sabine Pilot* claim sounds in tort; and (2) punitive or exemplary damages are available under such a claim with a showing of malice surrounding the plaintiff's firing. Because there was legally insufficient evidence of malice in this case, the exemplary damages award must be reversed. Accordingly, the judgment of the court of appeals is reversed insofar as it affirms the award of exemplary damages, and in all other respects is affirmed.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** April 20, 2012