

# NUMBER 13-24-00463-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE HW&B ENTERPRISES, LLC; ALOEMD, LLC; CHRISTOPHER HARDY; AND BLAKE WHITE

## ON PETITION FOR WRIT OF MANDAMUS

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Justice Benavides[1]

In this petition for writ of mandamus, relators HW&B Enterprises, LLC (HW&B);

AloeMD, LLC (AloeMD); Christopher Hardy;[2] and Blake White assert that the trial court[3]

abused its discretion by ordering them to produce financial discovery including, *inter alia*,

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] Christopher Hardy is also identified in the record as Christopher M. Hardy.

[3] This original proceeding arises from trial court cause number CL-23-2762-J in the County Court at Law No. 10 of Hidalgo County, Texas, and the respondent is the Honorable Armando J. Marroquin. *See id.* R. 52.2.

net worth information and federal income tax returns, in a collection case. We conditionally grant the petition for writ of mandamus in part and deny in part.

## I. BACKGROUND

The real parties in interest and plaintiffs below, Raul Lopez, individually as the chief executive officer of Aloe Queen, Inc. (Aloe Queen), and Aloe Queen, filed suit against relators based on the failure to pay for products and services. According to the plaintiffs' third amended petition, Hardy and White, who were the owners or partners of HW&B, defrauded the plaintiffs by purchasing products and services from Aloe Queen through HW&B; failing to pay for the products and services; intentionally rendering HW&B defunct; creating a new company, AloeMD; transferring the assets of HW&B to AloeMD; and operating AloeMD as the same business, from the same location, using the plaintiffs' products, without paying for them.

The plaintiffs specifically alleged that Hardy executed a contract to purchase products, supplies, and services from Aloe Queen, and after some period of time, ultimately failed to pay six invoices dating from December 3, 2020, to June 29, 2021, totaling $175,644.87. The plaintiffs asserted that Hardy thereafter engaged in various ploys to induce them to wait for payment. For instance, Hardy represented to Lopez that HW&B was waiting for "an infusion of cash from its investors." Hardy also offered to pay Aloe Queen "with a pasteurizer machine located in the Dominican Republic . . . worth at least $300,000.00." Lopez accepted the offer of the pasteurizer machine and arranged to ship the machine to McAllen, Texas, but Hardy "did not comply with the agreement." The plaintiffs further alleged that, after the payments were due, Hardy "intentionally failed to

2

pay the franchise tax" for HW&B in approximately May 2022, thereby rendering the company inactive, and by October 20, 2022, White and Hardy incorporated AloeMD.

The plaintiffs contended that the relators acted in concert, disregarding the corporate structures of HW&B and AloeMD in defrauding them, and thus the plaintiffs sought to pierce the "corporate veils" of both entities. The plaintiffs brought causes of action for breach of contract and fraud, sought damages for nonpayment, economic injuries, lost profits, and loss of business, and further sought exemplary damages.

Lopez propounded a set of requests for production to each relator. The four sets of requests are substantially similar and comprise a total of 196 requests for production. Relators filed a motion for protection arguing that Lopez's requests for production constituted harassment, invaded personal and property rights, and exposed relators to undue expense. Relators specifically sought protection from "net worth and post-judgment asset discovery pretrial in violation of Texas law." Lopez responded, asserting that he "needs to discover the debt paying ability of [relators]," and that relators had acted to defraud the plaintiffs "by concealing assets or transferring assets" in a scheme "to defraud [them] of monies rightly owed." Lopez asserted that asset and net worth discovery was necessary and that the plaintiffs had pleaded allegations regarding piercing the corporate veil. Lopez thereafter filed separate motions to compel discovery against each relator and filed a separate motion seeking discovery of documents pertaining to relators' net worth. Relators filed a response to Lopez's motion for discovery regarding net worth and further filed a reply brief in support of their motion for protection and a response to Lopez's motions to compel. Lopez filed a reply to relators' pleadings.

3

On August 20, 2024, the trial court held a brief, non-evidentiary hearing on the foregoing matters, and thereafter issued six separate orders on the relevant pleadings.[4] In two orders, the trial court denied relators' motion for protection, granted Lopez's motion for net worth discovery, required the production of discovery by a date certain, and assessed $1,500 in attorney's fees against relators. In the four remaining orders, the trial court granted Lopez's motions to compel discovery responses against each relator and ordered relators to respond to all requests for production.

This original proceeding ensued. Relators contend that: (1) the trial court abused its discretion in denying their motion for protective order, overruling their objections, and compelling production of financial discovery regarding their respective "debt-paying ability"; (2) the trial court abused its discretion in compelling the production of net worth discovery; and (3) they lack an adequate remedy by appeal. Relators further sought relief from the subject orders through an emergency motion for temporary relief. We granted that motion, stayed the trial court's orders, and requested that Lopez and Aloe Queen, or any others whose interest would be directly affected by the relief sought, file a response to the petition for writ of mandamus. TEX. R. APP. P. 52.2, 52.4, 52.8, 52.10.[5] Lopez filed a response to the petition for writ of mandamus and relators filed a reply thereto.

---

[4] The trial court issued six separate orders that are at issue in this original proceeding: (1) "Amended Order on [Relators'] Motions for Protection," signed August 22, 2024; (2) "Order on [Lopez's] Motion for Discovery of Net Worth Documents," signed on August 22, 2024; (3) "Amended Order on [Lopez's] Motion to Overrule Objections and Compel Discovery Responses from [Hardy]," signed on August 28, 2024; (4) "Amended Order on [Lopez's] Motion to Overrule Objections and Compel Discovery Responses from [HW&B]," signed on August 28, 2024; (5) "Amended Order on [Lopez's] Motion to Overrule Objections and Compel Discovery Responses from [AloeMD]," signed on August 28, 2024; and (6) "Amended Order on [Lopez's] Motion to Overrule Objections and Compel Discovery Responses from [White]," signed on August 28, 2024.

[5] Lopez subsequently filed a motion to reconsider our order granting temporary relief. Given our disposition of this original proceeding, we dismiss this motion as moot.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

## III. NET WORTH DISCOVERY

In their second issue, which we take out of order, relators contend that the trial court abused its discretion by granting Lopez's motion to compel discovery of net worth evidence "and compelling the production of all requests for production as net worth discovery."

### A. Applicable Law

"While parties may generally engage in discovery without the need for court intervention, the discovery of net worth information requires a written court order before any discovery may take place." *In re Juniper Ventures of Tex., LLC*, 679 S.W.3d 177, 180 (Tex. App.—San Antonio 2023, orig. proceeding). The Texas Civil Practice and Remedies Code governs the discovery of evidence regarding net worth:

> (a)     On the motion of a party and after notice and a hearing, a trial court may authorize discovery of evidence of a defendant's net worth if the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages. Evidence submitted by a party to the court in support of or in opposition to a motion made under this subsection

5

may be in the form of an affidavit or a response to discovery.

> (b) If a trial court authorizes discovery under Subsection (a), the court's order may only authorize use of the least burdensome method available to obtain the net worth evidence.

> (c) When reviewing an order authorizing or denying discovery of net worth evidence under this section, the reviewing court may consider only the evidence submitted by the parties to the trial court in support of or in opposition to the motion described by Subsection (a).

> (d) If a party requests net worth discovery under this section, the court shall presume that the requesting party has had adequate time for the discovery of facts relating to exemplary damages for purposes of allowing the party from whom net worth discovery is sought to move for summary judgment on the requesting party's claim for exemplary damages under Rule 166a(i), Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115; *see In re Juniper Ventures of Tex., LLC*, 679 S.W.3d at 181 (contrasting the statutory standard of review for pretrial discovery of net worth with the "clear and convincing" standard required for recovery of exemplary damages at trial).

## B. Analysis

In his motion for discovery of net worth documents, Lopez reiterated the allegations against relators made in his pleadings and asserted that, based on these allegations and his affidavit, he had demonstrated a substantial likelihood of success on the merits of his claim for exemplary damages. Lopez further asserted that the discovery was relevant and necessary to evaluate the relators' debt-paying ability and to discover relators' attempts to hide their assets. Lopez further implied that his requests for production constituted the "least burdensome method available to obtain the net worth evidence." In support of his motion, Lopez attached: (1) a rule 11 agreement allowing relators an extension of time to provide discovery responses; (2) portions of the civil practice and remedies code

6

pertaining to exemplary damages; (3) a print-out from the secretary of state's website showing that the corporate status of HW&B as an LLC had been forfeited, its registered agent was Hardy, and its address was 101 E. Park Blvd., Suite 600, in Plano, Texas; (4) a print-out from the secretary of state's website regarding the organization of AloeMD, showing that it was filed on April 12, 2022, as an LLC, its registered agent was White, and its address was also 101 E. Park Blvd, Suite 600, in Plano, Texas; and (5) Lopez's aforementioned affidavit. Lopez's affidavit provided, in relevant part:

3.    "[Hardy] visited my office and my warehouse. He also inspected my aloe vera product."

4.    "[Hardy] like[d] our product and decided to order product that same day."

5.    "Our agreement made that same day provided that we would sell aloe vera juice, supplies[,] and services to [Hardy] and his company, [HW&B]."

6.    "The terms that we agreed on included payment would be made thirty (30) days from delivery of the product."

7.    "We agreed that [Hardy] and his company would pay for the freight. [Hardy] even sent his transport truck to our location in McAllen, Hidalgo County, Texas to pick up the aloe vera product."

8.    "We also agreed that the product would not be returned to us."

. . . .

11.   "After several orders and shipments [Hardy] started getting behind on his payments."

12.   "The balance grew to $175,644.87."

13.   "I relied on [Hardy's] promise to pay the balance."

14.   "[Hardy] also told me that he was going to get an infusion of money from his investors.''

15.   "[Hardy] also promised me that he would pay the balance off with a

7

pasteurizer machine that he had in the Dominican Republic. I understood that he owned the pasteurizer machine. I accepted his offer and made arrangements for shipment of the machine to my warehouse in McAllen, Hidalgo County, Texas. [Hardy] never sent me the machine."

In his pleadings, Lopez asserted that he was entitled to exemplary damages based on "fraud and other intentional acts [including] gross malice and/or conscious indifference malice." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1), (2). In this context, "fraud" is defined as "fraud other than constructive fraud," and "malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id.* § 41.001(6), (7). To recover exemplary damages at trial for fraud, Lopez would be required to prove that: (1) the defendant made a false, material representation; (2) knowing it was false or made recklessly as a positive assertion without any knowledge of its truth; (3) intending to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation causing the plaintiff injury. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). To recover exemplary damages based on malice at trial, Lopez would need to prove actual damages and submit clear and convincing evidence of outrageous, malicious, or otherwise reprehensible conduct. *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 867 (Tex. 2017). He would further be required to prove that relators specifically intended for him to suffer substantial injury that was "independent and qualitatively different" from the compensable harms associated with his underlying causes of action. *Id.* (quoting *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012)).

We conclude that the trial court abused its discretion in granting Lopez's motion for net worth discovery. First, the trial court's order granting Lopez's motion for net worth

discovery does not contain the required finding "*that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages.*" *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(a) (emphasis added). In the absence of this required finding, the trial court abused its discretion in compelling the production of net worth information. *See id.*; *see also In re Kittle*, No. 01-24-00462-CV, 2024 WL 3446947, at *2 & n.6 (Tex. App.—Houston [1st Dist.] July 18, 2024, orig. proceeding) (mem. op.) (collecting cases). Second, limiting our review to the evidence submitted to the trial court, Lopez failed to meet his burden to show that he possesses a substantial likelihood of success on the merits on his claim for exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(a), (c). Lopez's affidavit merely provides that Hardy failed to pay $175,644.87 for products and services rendered, thus establishing actual damages, and does not include circumstantial or direct evidence from which we could infer that Lopez has a substantial likelihood of success on the merits for his fraud and malice claims. *See id.* And third, even if Lopez had met his burden to show that he possesses a substantial likelihood of success on the merits on his claim for exemplary damages, there is nothing in the record before us indicating that the trial court's order employed "the least burdensome method available to obtain the net worth evidence." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(b).

## C.    Summary

Having concluded that the trial court abused its discretion by granting Lopez's motion for net worth discovery, we sustain relators' second issue.

## IV.    REMAINING DISCOVERY

In their first issue, relators assert that the trial court abused its discretion by denying

their motion for protective order, overruling their objections, and compelling production of "certain financial related discovery" sought to determine their respective "debt-paying" abilities. Relators contend that the requests for production lack relevance and are overbroad, unduly burdensome and harassing in nature, and invade their personal and property rights. Relators further contend that Lopez failed to meet his burden to obtain their federal income tax returns. Lopez asserts, in contrast, that his requests seek relevant information that is appropriately tailored to the needs of the case.

## A.     Federal Income Tax Returns

Relators assert that Lopez's requests for production "include federal tax returns which are confidential" and therefore "require [him] to meet additional requirements," yet Lopez "made no attempt to do so."

Federal income tax returns are discoverable if they are relevant and material to the issues presented in the lawsuit. *Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995) (orig. proceeding) (per curiam); *Maresca v. Marks*, 362 S.W.2d 299, 300 (Tex. 1962) (orig. proceeding). However, we approach the production of tax returns with caution given the privacy interests at stake. *See Hall*, 907 S.W.2d at 494; *Maresca*, 362 S.W.2d at 301; *In re Van Haselen*, 650 S.W.3d 14, 20–21 (Tex. App.—El Paso 2021, orig. proceeding [mand. denied]). Thus, when a party objects to the production of its tax returns, the burden falls upon the requesting party to show that the returns are relevant and material to the issues in the case. *In re Van Haselen*, 650 S.W.3d at 21; *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding [mand. denied]). Further, the requesting party must show that the desired information cannot be obtained from another less intrusive source. *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992)

(orig. proceeding) (per curiam); *In re Van Haselen*, 650 S.W.3d at 21; *In re Beeson*, 378 S.W.3d at 12.

On this record, Lopez has not met his burden to show that the returns are relevant and material to the issues in the case or that the desired information cannot be obtained from another source. *See In re Van Haselen*, 650 S.W.3d at 21; *In re Beeson*, 378 S.W.3d at 12. Therefore, we sustain relators' first issue, in part, insofar as it concerns Lopez's request for relator's federal income tax returns.

## B. Expense, Harassment, and Rights

Relators further contend that the discovery requests constituted harassment and invaded their privacy and property rights, and that responding to the requests would cause them unnecessary expense. They thus assert that the trial court abused its discretion by denying their motion for a protective order.

Courts must limit discovery that "is unreasonably cumulative or duplicative," or discovery that "is obtainable from some other source that is more convenient, less burdensome, or less expensive," or when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." TEX. R. CIV. P. 192.4(a), (b). In determining whether discovery should be limited, we apply a case-by-case proportionality analysis balancing these considerations. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 248, 253 (Tex. 2021) (orig. proceeding); *In re State Farm Lloyds*, 520 S.W.3d 595, 599–600 (Tex. 2017) (orig. proceeding). A party seeking a protective order on the basis that the discovery requests impose "undue burden,

11

unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights," *see* TEX. R. CIV. P. 192.6(b), "must show particular, specific and demonstrable injury by facts sufficient to justify a protective order." *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009) (orig. proceeding); *see In re Issuance of Subpoenas*, 502 S.W.3d 373, 381 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Thus, a party seeking to avoid discovery on these grounds must plead and prove that these grounds exist. *See, e.g.*, *In re Liberty Cnty. Mut. Ins.*, 679 S.W.3d 170, 176 (Tex. 2023) (orig. proceeding) (per curiam) (stating that a litigant was required to produce evidence to support allegations that discovery requests would impose a significant burden and with "personal cost to . . . privacy"); *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 253 (stating that a litigant's complaints that discovery requests were burdensome and harassing required evidentiary support); *In re State Farm Lloyds*, 520 S.W.3d at 614 ("The opposing party must object and support proportionality complaints with evidence if the parties cannot resolve a discovery dispute without court intervention."); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) ("A party resisting discovery, however, cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing.").

Relators' motion for protection was accompanied by copies of the requests for production at issue; however, relators did not include evidence in support of their contentions. Further, the trial court's hearing on discovery was not evidentiary in nature. Accordingly, relators failed to meet their burden with regard to these objections. *See, e.g.*, *In re Liberty Cnty. Mut. Ins.*, 679 S.W.3d at 176; *In re Collins*, 286 S.W.3d at 919. We overrule that part of relators' first issue concerning unnecessary expense, harassment,

12

and the invasion of personal and property rights.

## C.      Relevance and Overbreadth

Relators allege that Lopez's requests for production seek irrelevant information pertaining to financial data and asset tracing that is germane to post-judgment collection efforts rather than liability or damage issues. Relators further contend that requests for production regarding their ability to pay debts are not within the bounds of permissible discovery. Relators also assert, for instance, that Hardy, White, and AloeMD were not parties to the invoices at issue, so financial discovery as to them is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Finally, relators argue that the requests for production are overly broad because some requests do not contain a temporal limitation, some requests seek documents in existence since the companies' inceptions, and some are limited to a ten-year period of time.

### 1.      Relevance

Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX. R. CIV. P. 192.3(a). We liberally and broadly construe the phrase "relevant to the subject matter" to provide litigants the opportunity "to obtain the fullest knowledge of the facts and issues prior to trial." *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding) (quoting *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) and *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)).

13

Nevertheless, the trial court's discretion in determining relevance is "not unlimited." *In re Kuraray Am., Inc.*, 656 S.W.3d 137, 142 (Tex. 2022) (orig. proceeding) (per curiam). We evaluate the relevancy of discovery on a case-by-case basis by examining the pleadings and the claims and defenses at issue in the lawsuit. *See Rescue Concepts Inc. v. HouReal Corp.*, 696 S.W.3d 127, 143 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *In re Plains Pipeline, L.P.*, 618 S.W.3d 780, 789–90 (Tex. App.—El Paso 2020, orig. proceeding); *In re Allstate Fire & Cas. Ins.*, 617 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding).

Relators assert that Lopez conceded the purpose of his requests for production is to discover relators' debt-paying ability. We agree that Lopez repeatedly asserts this proposition, but his rationale for the discovery is not so limited. As stated previously, Lopez alleged in his pleadings that relators intentionally acted in concert to defraud the plaintiffs by purchasing products through one corporation, allowing that corporation to become defunct by failing to pay its franchise tax, and creating a new corporation operating the same business at the same location, allegedly using Aloe Queen's products to do so. Lopez asserted that relators concealed and transferred assets in the course of these actions, and that White and Hardy used the corporate structures to commit fraud. Lopez asserted that Hardy and White disregarded the corporate structures, that the corporate veils should be pierced, and that the corporations were mere alter egos of their principals. In short, as Lopez states in his reply to relators' briefing, this is "not a simple collection case." *See, e.g.*, TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2), (b) (regarding piercing the corporate veil); *In re Burkett*, 657 S.W.3d 728, 735 (Tex. App.—El Paso 2022, orig. proceeding); *In re Elara Signature Homes, Inc.*, 611 S.W.3d 62, 65 (Tex. App.—

14

Beaumont 2020, orig. proceeding) (per curiam).

### 2. Overbreadth

"An overbroad discovery request is, in essence, one that seeks irrelevant information." *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (orig. proceeding) (per curiam). A discovery request is not overbroad if it is "reasonably tailored to include only matters relevant to the case." *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam); *see In re Kuraray Am., Inc.*, 656 S.W.3d at 142. Accordingly, "[a] central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re UPS Ground Freight, Inc.*, 646 S.W.3d at 832 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) (per curiam)). The party seeking discovery has the burden to show that the requested documents are relevant and therefore discoverable. *In re Kuraray Am., Inc.*, 656 S.W.3d at 142; *see* TEX. R. CIV. P. 192.3 (delineating the scope of discovery). In keeping with these tenets, "discovery must be reasonably limited in time and geographic scope." *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 489 (Tex. 2014) (orig. proceeding) (per curiam); *see In re CSX Corp.*, 124 S.W.3d at 152. A discovery request is overbroad when it encompasses time periods, activities, or subject matters that are not relevant to the case in which the discovery is sought. *See In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). Such requests are overly broad as a matter of law. *In re United Fire Lloyds*, 578 S.W.3d 572, 580 (Tex. App.—Tyler 2019, orig. proceeding).

Based on our review, some of the requests for production are limited in time by their own subject matter. For instance, a request for the articles of incorporation for the companies is inherently limited in temporal duration. Other requests are limited by the periods that the corporations were or have been in existence, or by an express period of ten years. Such limitations are not *ipso facto* overbroad; however, their propriety must be measured by the relevance of the time periods at issue in this case. *See, e.g.*, *In re Liberty Cnty. Mut. Ins.*, 679 S.W.3d at 175 (allowing a timeframe from "five years before the accident and five years after").

### 3.    Analysis

As previously stated, the trial court ordered relators to fully respond to 196 requests for production. Relators' contentions are global in nature and do not focus on individual requests for production or explain how their contentions apply to each individual request. We deny relief without prejudice as to these global challenges in this original proceeding. First, a petition for writ of mandamus must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record." TEX. R. APP. P. 52.3(h); *see In re Mansour*, 630 S.W.3d 103, 109 (Tex. App.—San Antonio 2020, orig. proceeding). We have no duty or right to perform an independent review of the record and applicable law to determine if the trial court erred. *See In re Phommivong*, 560 S.W.3d 280 (Tex. App.—Amarillo 2016, orig. proceeding); *In re Lankford*, 501 S.W.3d 681, 690 (Tex. App.—Tyler 2016, orig. proceeding). Second, based upon the record provided, it is unclear if the trial court considered the parties' arguments separately with regard to each request, or whether the trial court's rulings were premised on its erroneous determination that, in general, net worth evidence was discoverable. Under these

16

circumstances, rather than this Court attempting to set the precise bounds of discovery in the first instance, we believe the trial court should have an opportunity to reconsider its rulings in light of our memorandum opinion. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 713–14 (Tex. 1998) (orig. proceeding) (per curiam).

## D.    Summary

We sustain relators' first issue as to their contentions regarding federal income tax returns and overrule it as to relators' contentions regarding expense, harassment, and the invasion of personal and property rights. Without addressing the merits, we further overrule relator's first issue regarding relators' relevance and overbreadth objections.

## V.    ADEQUACY OF A REMEDY AT LAW

In their third issue, relators contend that they lack an adequate remedy at law to correct the trial court's discovery errors. Even when the trial court abuses its discretion, we do not grant mandamus relief if relators possess a clear and adequate remedy at law, such as a regular appeal after final judgment. *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 372 (Tex. 2023) (orig. proceeding) (per curiam).

Here, the trial court granted discovery regarding, *inter alia*, net worth and federal income tax returns which on this record was not authorized by our discovery rules. "A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Kuraray Am., Inc.*, 656 S.W.3d at 142 (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d at 488). We thus conclude that relators lack an adequate remedy by appeal and mandamus relief is appropriate.

17

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that relators have met, in part, their burden to obtain relief. We lift the stay previously imposed in this case. We conditionally grant the petition for writ of mandamus in part as to net worth discovery and federal income tax returns. We deny the petition for writ of mandamus in part as to relators' request for a protective order based on expense, harassment, and the infringement of personal and property rights. We deny relief without prejudice in part as to relators' contentions regarding relevance and overbreadth. We direct the trial court to vacate its orders and proceed in accordance with the applicable law and this memorandum opinion. Our writ will issue only if the trial court fails to promptly comply.

GINA M. BENAVIDES
Justice

Delivered and filed on the
3rd day of December, 2024.